UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| KEITH H. HOLM,<br><br>                   Plaintiff,<br><br>  v.<br><br>MICHAEL MEYERS, et al.,<br><br>                  Defendants. | IN ADMIRALTY<br><br>No.  3:21-cv-05501-BJR<br><br>ORDER GRANTING IN PERSONAM DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

## I.     INTRODUCTION

Plaintiff Keith Holm ("Plaintiff" or "Holm"), filed this lawsuit against *in personam* defendant Michael Myers ("Defendant" or Myers) and *in rem* defendant M/Y Head Hunter (the "Head Hunter"), asserting claims under the Jones Act, general maritime law, and for common law negligence arising from injuries Plaintiff alleges he sustained while aboard Myers' boat, the Head Hunter.  Presently before the Court is Defendant's motion for summary judgment on all of Plaintiff's claims ("Motion" or "Mot.," Dkt. 13).  Having reviewed the Motion, the record of the case, and the relevant legal authorities, the Court GRANTS the Motion and dismisses Plaintiff's claims.  The reasoning for the Court's decision follows.

## II.     BACKGROUND

**A.     Myers and Holm, and their Pre-Voyage Discussions**

Plaintiff's lawsuit arises from an incident that took place aboard the Head Hunter near a marina in Kingston, Washington on August 1, 2019.  At the time of the incident, the 26-foot boat

ORDER - 1

was owned by Myers, who was then 76 years old and retired.  Myers Dep. Tr. at 8:10-11, 24:23-25:2.  Holm, who was then 54 years old, had been self-employed for roughly 20 years under his sole proprietorship, Holm Heritage Painting and Boatworks ("Holm Heritage Painting"), which provided boat painting and other vessel-related services.  Holm Dep. Tr. at 20:21-23:3, 47:3-25.  Holm testified that he charges customers an hourly "shop rate" for his services, which was $55 on August 1, 2019.  *Id*. at 40:21-22; *see* Dkt. 14, Ex. 4.

The parties agree that, sometime shortly before the date of the incident, Myers telephoned Holm – who had previously done work on another boat owned by Myers – to ask if Holm could help sail the Head Hunter on a three-to-four hour voyage from the Kingston marina to Holm's warehouse in Port Townsend, Washington, for engine repairs.  Holm Dep. Tr. at 54:5-55:5, 58:13-59:4, 59:15-60:20; Myers Dep. Tr. at 14:2-14.  Both testified that Myers asked for Holm's help because Holm lived in Port Townsend and was familiar with its marina (Holm Dep Tr. at 61:17-25; Myers Dep. Tr. at 14:2-14), although Holm also testified that he believed Myers' request was based in part on his superior experience operating boats like the Head Hunter.  Holm Dep. Tr. at 59:15-25.

The parties disagree about other aspects of Myers' request.  According to Holm, Myers had telephoned him asking if he could "be his deckhand and assistant."  Holm Dep. Tr. at 60:1-8.[1]  Holm testified that although he initially declined Myers' request because of personal obligations, he agreed after Myers promised to pay him his shop rate.  *Id.* at 60:1-8, 13-20.  Myers, on the other hand, denies that he ever asked Holm to be his deckhand.  Myers Decl. ¶ 12.  Myers further denies

---

[1] When pressed at his deposition, Holm conceded that he could not recall the exact words Myers used in making the request.  Holm Dep. Tr. at 62:1-10

ORDER - 2

that he promised to pay Holm his shop rate prior to the voyage, asserting instead that he "never discussed paying [] Holm anything for the trip." *Id*. ¶ 13.

### B.     The August 1, 2019 Incident

Holm and Myers boarded the Head Hunter at the Kingston marina at approximately 10:00 a.m. on August 1, 2019. Holm Dep. Tr. at 66:2-6. After sailing roughly 100 to 200 meters to the edge of the marina's waters and the "no wake" zone, the boat's engine stalled and could not be restarted. *Id*. at 65:6-25, 69:2-5; Myers Dep. Tr. at 47:11-18. Holm deployed an anchor, and after he and Myers spent some time making calls for help, a "Good Samaritan" boat arrived and offered to tow the Head Hunter back to the Kingston marina. Holm Dep. Tr. at 65:1-5; Myers Dep. Tr. at 54:10-13.

According to Holm, as he was positioned between both boats working to tie them together with a "side-tow," two motor yachts simultaneously passed by at high speed, creating a wake that caused the Head Hunter and the Good Samaritan boat to "buck" up and down and slam into each other. Holm Dep. Tr. at 71:9-21, 74:9-25, 75:6-11, 93:15-22. Holm testified that he held onto both boats' railings in order to protect his legs from being caught in the "bite" of the boats' bulwarks, but his arms became injured when they were pulled apart and jerked inward by the boats' drift. *Id.* at 74:9-76:10 ("It felt like I got them yanked out of their sockets"), 92:4-23 ("I managed to get my feet out of the way and paid for it with my arms."); Holm Decl. ¶ 7. Holm and Myers eventually returned to the Kingston marina and deboarded the Head Hunter approximately four hours after the voyage began. Holm Dep Tr. at 66:7-19.

The parties dispute the amount of money Myers paid Holm upon returning to the marina. Myers declares that he gave Holm $60, "in an effort to say 'thank you,'" and told Holm that he

ORDER - 3

"should use the $60 for gas." Myers Decl. ¶ 14. Holm, on the other hand, testified that Myers paid him $200 in cash. Holm Dep. Tr. at 66:20-67:22; Holm Decl. ¶ 5.

### C. Procedural History

Plaintiff filed this lawsuit on July 13, 2021, asserting claims for (1) common law negligence and negligence under the Jones Act, premised on allegations that Myers' conduct aboard the Head Hunter breached a duty of care owed to Holm; (2) unseaworthiness, based on allegations that the Head Hunter lacked, among other things, a reliable means of propulsion and a competent master and crew "for the safe and seamanlike operation of the vessel"; and (3) failure to provide maintenance and cure to Holm. Complaint ("Compl.," Dkt. 1).

On August 26, 2021, Holm, though his counsel, sent Myers a demand for maintenance at the rate of $65 per day starting on the date of the incident, and for "all medical expenses related to the incident until [] Holm reaches maximum medical cure." Gibbons Decl., Ex. A. Myers and his insurer declined to provide the requested maintenance and cure. Krishner Decl., Ex. 7; Myers Dep. Tr. at 97:8-23; Holm Decl. ¶ 8.

Defendant filed the Motion on March 29, 2022, seeking summary judgment on all of Plaintiff's claims. Plaintiff filed an opposition on April 19, 2022 ("Opposition" or "Opp.," Dkt. 19), and Defendant replied on April 27, 2022 ("Reply" or "Rep.," Dkt. 23).

### III. STANDARD OF REVIEW

"The standard for summary judgment is familiar: 'Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact.'" *Zetwick v. County of Yolo*, 850 F.3d 436, 440 (9th Cir. 2017) (quoting *United States v. JP Morgan Chase Bank Account No. Ending 8215*, 835 F.3d 1159, 1162 (9th Cir. 2016)). A court's function on summary judgment is not "to weigh the evidence and

ORDER - 4

determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). If there is not, summary judgment is warranted.

### IV. DISCUSSION

#### A. Defendants' Motion to Strike

In his Reply, Defendant moves, pursuant to Local Civil Rule 7(g), to strike (1) the declaration of Captain Charles A. Jacobsen (Dkt. 20) in its entirety; and (2) Holm's declaration (Dkt. 21) "where it conflicts with his interrogatory responses and deposition testimony and otherwise contains inadmissible hearsay statements." Rep. at 1-7.

Defendant argues that Captain Jacobson's declaration impermissibly "presents the Court with legal opinions in the guise of expert testimony" concerning Myers' compliance with applicable federal regulations and whether Holm was employed by Myers as a seaman. *See* Rep. at 1-2. While the declaration and accompanying report certainly contain legal opinions (*see, e.g.*, Jacobson Decl., Report ¶ 1 ("It is my opinion that [] Holm … was under employment when he was injured"), ¶ 3 ("It is my opinion that … Myers was negligent in his duties")), those materials are not uniformly objectionable on that basis. Therefore, this Court disregards only those portions of Captain Jacobson's declaration that contain improper legal opinions.[2]

As to Holm's declaration, Defendant argues that it was submitted as a "sham declaration" in order "to create an issue of material fact as to whether or not he was employed by [] Myers," and also reports inadmissible hearsay as to what his physicians told him about his alleged shoulder injury. *See* Rep. at 3-7. Defendant is correct that Holm, in his declaration, contradicts his prior

---

[2] In all events, Captain Jacobson's proffered opinions primarily address whether Myers was negligent and the Head Hunter was unseaworthy (*see* Jacobson Decl., Report ¶¶ 2-5), which are issues this Court need not reach.

ORDER - 5

deposition testimony and interrogatory answers. However, the Court declines to strike the declaration, mindful that on summary judgment, the Court must construe all disputed facts in favor of Plaintiff. Further, while Holm's statements about his physicians' diagnosis and recommendations constitute hearsay, they are nonetheless "admissible for summary judgment purposes because they could be presented in an admissible form at trial." *Fonseca v. Sysco Food Servs. of Arizona, Inc.*, 374 F.3d 840, 846 (9th Cir. 2004) (quotation marks and citation omitted); *see Denton v. Pastor*, No. 17-cv-5075, 2021 WL 6622137, at *3 (W.D. Wash. Dec. 16, 2021) (declining to strike statement in declaration about physician's diagnoses because "one of plaintiff's doctors could testify to plaintiff's symptoms and diagnosis at trial"), *report and recommendation adopted*, 2022 WL 203489 (Jan. 24, 2022).

### B. Whether Plaintiff is Eligible to Seek Recovery on his Jones Act, Unseaworthiness, and Maintenance and Cure Claims

#### 1. Eligibility to Maintain a Jones Act Claim

Plaintiff asserts a negligence claim under the Jones Act, which provides that "[a] seaman injured in the course of employment … may elect to bring a civil action at law, with the right of trial by jury, against the employer." 46 U.S.C. § 30104. Consistent with the statute's text, Plaintiff must satisfy two threshold requirements to be entitled to recovery: (1) he must have been employed by Defendant at the time of his injury, and (2) he must have then been a seaman. *See Brown v. Parker Drilling Offshore Corp.*, 410 F.3d 166, 178 (5th Cir. 2005) ("[T]he employer-employee relationship is an absolute prerequisite to Jones Act liability." (citation omitted)); *Norfolk Shipbuilding & Drydock Corp. v. Garris*, 532 U.S. 811, 817 (2001) (noting that recovery under the Jones Act is "only for seamen"). Defendant argues that Plaintiff satisfies neither requirement. *See* Mot. at 14-23.

ORDER - 6

### a.     Whether Holm was Myers' Employee

No reasonable juror could conclude that Plaintiff was employed by Defendant on the date of the incident. As an initial matter, Plaintiff conceded twice during discovery – during his deposition and in his interrogatory responses – that he was not employed outside of Holm Heritage Painting on August 1, 2019 and for many years beforehand. *See* Holm Dep. Tr. at 48:16-19 ("Q. Other than Holm's Heritage Painting, have you had any other employment of any kind in 2017, 2018, 2019, or 2020? A. I do not think so."); Krisher Decl., Ex. 5 at 5 (Holm responding, "I have been self-employed for the past 10 years … as Holm Heritage Painting," in response to interrogatory about past employment). Holm indicated the same in an Injury Information Request form he submitted to Myers' insurer, wherein Holm also specifically stated that, "at the time of the accident," he was not "in the course of [his] employment." *See* Krisher Decl, Ex. 4. These concessions provide meaningful evidence that Holm did not understand himself to have been employed by Myers on August 1, 2019.

Moreover, the submitted evidence – viewed in the light most favorable to Plaintiff, and considering the factors enumerated in the Restatement (Second) of Agency for determining whether an employment relationship exists[3] – demonstrates that Holm was not Myers' employee. Most importantly, Myers exercised little control over Holm while aboard the Head Hunter. *See Hartford Fire Ins. Co. v. Leahy*, 774 F. Supp. 2d 1104, 1118 (W.D. Wash. 2011) (noting that "the

---

[3] Those factors include: "(a) the extent of control which, by the agreement, the master may exercise over the details of the work; (b) whether or not the one employed is engaged in a distinct occupation or business; (c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision; (d) the skill required in the particular occupation; (e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work; (f) the length of time for which the person is employed; (g) the method of payment, whether by the time or by the job; (h) whether or not the work is a part of the regular business of the employer; (i) whether or not the parties believe they are creating the relation of master and servant; and (j) whether the principal is or is not in business." Restatement (Second) of Agency § 220(2).

ORDER - 7

extent of control … over the details of the work" is often the decisive factor). In particular, Myers provided no tools to Holm (*see* Holm Dep. Tr. at 61:8-16), and both parties' testimony reflects that Myers' instructions to Holm were limited to a general request that he navigate the boat. *See* Holm Dep. Tr. at 62:12-24; Myers Dep. Tr. at 42:10-18.

The agreed upon evidence supports the lack of an employment relationship. While Holm testified that Myers asked him to "be his deckhand" (Holm Dep. Tr. at 60:1-8) – a request this Court will assume took place, despite Holm's murky recollection (*see supra* at n.1) – there is no indication that Myers was in any position to employ a deckhand or any crew. He was 76 years old and retired; had purchased the Head Hunter as a recreational boat; never operated or planned to operate it commercially; and declares that he did not understand Holm to be his employee at any time. *See* Myers Decl. ¶¶ 5-7, 10. Holm, for his part, testified that he had not served as a deckhand on a boat since the "[m]id to late '90s." Holm Dep Tr. at 48:9-15. Further, the planned voyage was to last for a very brief period of time: three to four hours. *See id.* at 58:20-59:8. Finally, Holm was never provided or signed any employment papers, and never received a formal paycheck from, or had taxes withheld by, Myers. *See id.* at 61:1-7; Myers Decl. ¶ 11.

Insofar as Holm came aboard the Head Hunter for business purposes, and not as Myers' friend, then he had done so, at best, as an employee of Holm Heritage Painting. Indeed, Holm testified that Myers had agreed to pay him the Holm Heritage Painting "shop rate" ($55 per hour) and, assuming facts as Plaintiff relates them, ultimately paid him roughly that amount ($200). Holm Dep. Tr. at 66:20-67:22, 149:2-4; *see* Dkt. 22, Ex. I. Holm's position is more like that of an independent contractor. That, however, does not make him eligible to seek recovery from Myers under the Jones Act, or for maintenance and cure. *See, e.g.*, *Moore v. Noble Drilling Co.*, 637 F. Supp. 97, 99 (E.D. Tex. 1986) (plaintiff employed by independent contractor while injured aboard

ORDER - 8

vessel was ineligible to seek recovery from vessel's owner under Jones Act because owner "was not the plaintiff's employer").

Accordingly, the Court finds that Plaintiff has not provided sufficient evidence from which a reasonable juror could conclude that Plaintiff was Defendant's employee on the date of the incident.

### b. Whether Holm was a Seaman

The Court also finds that, on the evidence submitted, Plaintiff was not a seaman on the date of the incident. The Supreme Court has articulated a two-part test for determining whether an employee can be conferred seaman status: (1) his "duties must contribut[e] to the function of the vessel or to the accomplishment of its mission"; and (2) he "must have a connection to a vessel in navigation … that is substantial in terms of both duration and its nature." *Scheuring v. Traylor Bros.*, 476 F.3d 781, 785 (9th Cir. 2007) (citing *Chandris, Inc. v. Latsis*, 515 U.S. 347, 368 (1995) (quotation marks omitted)). Defendant does not dispute that Holm satisfies the first requirement, but instead contends that Holm fails to satisfy the second. Mot. at 18-23.

"The fundamental purpose of this substantial connection requirement is … to separate the sea-based maritime employees who are entitled to Jones Act protection from those land-based workers who have only a transitory or sporadic connection to a vessel in navigation, and therefore whose employment does not regularly expose them to the perils of the sea." *Chandris*, 515 U.S. at 368. The Supreme Court has "explained that this test is 'fundamentally status based,'" and has "also equated the question of who is a 'seaman' to the determination of who is a 'member of a crew.'" *Scheuring*, 476 F.3d at 785 (quoting *Chandris*, 515 U.S. at 356, 361).

Holm's voyage aboard the Head Hunter was of insufficient duration to satisfy the substantial connection requirement. In *Sologub v. City of New York*, 202 F.3d 175 (2d Cir. 2000),

ORDER - 9

the Second Circuit found that the plaintiff's "one eight-hour tour aboard a vessel" was "hardly enough to meet the 'duration' test promulgated by the Supreme Court." *Id.* at 180.  Similarly, in *Witte v. Matson Navigation Co.*, No. 97-cv-2006, 1998 WL 965986 (W.D. Wash. June 1, 1998), a court in this District found that the plaintiff, who was hired for a three-day job aboard a vessel as a relief engineer, was not a seaman in part because the job constituted "temporary work." *Id.* at *2-3.  Here, the voyage was scheduled to last – and eventually did last – only four hours, and as Holm testified, there had been no discussion of him ever again coming aboard the Head Hunter. *See* Holm Dep. Tr. at 58:20-59:8.  This amount of time aboard a vessel – even more brief than in *Sologub* and *Witte* – plainly did not "regularly expose [Holm] to the perils of the sea."  *See Chandris*, 515 U.S. at 368.  Rather, it created only a transitory connection to the Head Hunter that was not of sufficient duration to create a substantial connection to that vessel.  *See, e.g.*, *Bullis v. Twentieth Century-Fox Film Corp.*, 474 F.2d 392, 394 (9th Cir. 1973) (plaintiffs aboard vessel for two hours were not seamen because their relationship to vessel "was purely transitory").  The Court therefore finds that, on the evidence presented, Plaintiff cannot qualify as a seaman.

Accordingly, Plaintiff is not eligible to maintain a Jones Act negligence claim against Defendant.

### 2. Eligibility to Maintain an Unseaworthiness Claim

Plaintiff asserts a claim against Defendant for unseaworthiness under general maritime law, which imposes a duty upon a vessel owner to "furnish a seaworthy ship" that is "reasonably fit for its intended use." *Ribitzki v. Canmar Reading & Bates, Ltd. P'ship*, 111 F.3d 658, 664 (9th Cir. 1997), *as amended on denial of reh'g* (June 5, 1997).  As with claims under the Jones Act, "claims of unseaworthiness … require that the plaintiff be a seaman." *Bauer v. MRAG Americas, Inc.*, No. 08-cv-00582, 2009 WL 10695613, at *3 (D. Haw. Sept. 23, 2009) (citing *Scheuring*, 476 F.3d at

ORDER - 10

784 n.3 (9th Cir. 2007)), *aff'd*, 624 F.3d 1210 (9th Cir. 2010).  Given this Court's finding that no reasonable juror could conclude that Plaintiff was a seaman at the time of the incident, Plaintiff is not eligible to maintain an unseaworthiness claim against Defendant.

### 3. Eligibility to Maintain a Claim for Maintenance and Cure

Finally, Plaintiff asserts a claim for maintenance and cure, also under general maritime law, which entitles an injured seaman to recover from his employer a living allowance, unearned wages, and reimbursement for medical expenses "from the onset of injury or illness until the end of the voyage."  *Lipscomb v. Foss Mar. Co.*, 83 F.3d 1106, 1109 (9th Cir. 1996).  As with the Jones Act and unseaworthiness claims, in order to recover maintenance and cure from Defendant, Plaintiff must establish that he was (1) employed by Defendant at the time of his injury, and (2) a seaman.  *See Vaughan v. Atkinson*, 369 U.S. 527, 532-33 (1962) ("the duty to provide maintenance and cure is … one annexed to the employment"); *Bauer*, 2009 WL 10695613, at *3 (claims for maintenance and cure "require that the plaintiff be a seaman").  For the reasons stated above, no reasonable juror could find that Plaintiff satisfies either requirement.  He is, therefore, ineligible to maintain this claim against Defendant.

### C. Holm Lacks Adequate Proof of Causation

As noted above, Plaintiff brings a Jones Act claim, an unseaworthiness claim, a claim for maintenance and cure, and a common law negligence claim.  To prevail on each of these claims, the plaintiff must prove that his injuries were caused by the incident in question.  *See Ribitzki*, 111 F.3d at 662 ("To recover on his Jones Act claim, [plaintiff] must establish that … this negligence was a cause, however slight, of his injuries"); *Ili v. Am. Seafoods Co., LLC*, 357 F. App'x 807, 809 (9th Cir. 2009) ("To prevail on an unseaworthiness claim, the plaintiff must establish … proximate causation between the unseaworthy condition and the injury."); *Kopczynski v. The Jacqueline*, 742

ORDER - 11

F.2d 555, 559 (9th Cir. 1984) ("Maintenance and cure is the obligation of a shipowner to care for a seaman injured *during the course of maritime employment*." (emphasis added)); *Wuthrich v. King Cnty.*, 185 Wash. 2d 19, 25 (Wn. Sup. Ct. 2016) (proximate causation is an element of a common law negligence claim). Where a lay fact finder would be incapable of understanding the causal relationship between the alleged incident and injury, the plaintiff must proffer expert medical testimony supporting causation. *See Cherry v. United States*, No. 06-cv-5452, 2007 WL 3166773, at *6 (W.D. Wash. Oct. 25, 2007) (plaintiff failed to establish that negligence or unseaworthiness caused her injuries because she did not present "credible medical testimony"); *Finchen v. Holly-Matt, Inc.*, No. 04-cv-1285, 2006 WL 1687589, at *14-15 (W.D. Wash. June 20, 2006) (dismissing claim for maintenance and cure based on insufficient "credible evidence" of medical causation); *cf. Gowdy v. Marine Spill Response Corp.*, 925 F.3d 200, 206 (5th Cir. 2019) (following "the general rule that expert testimony is unnecessary when lay fact-finders are capable of understanding causation").

The only evidence of causation offered by Plaintiff is his own testimony.[4] He asserts, specifically, that as a result of the incident, he sustained injuries to both shoulders (a rotator cuff tear in his right shoulder, and a bicep attachment tear in his left shoulder) as well as his back and hips, and that his doctors have since recommended that he undergo shoulder surgery. *See* Decl. ¶ 7. Holm admits, though, that prior to the incident, he suffered from "aches and pains" in his left shoulder and his "right shoulder did hurt sometimes." *Id*. Indeed, Holm's medical records reflect that *in January 2019, eight months before the incident, Holm – who then complained of "chronic pain [in] both shoulders" – had already been told he would need rotator cuff surgery*." Dkt. 17

---

[4] While Plaintiff may otherwise have called his treating physician to testify at trial about a medical diagnosis (*see supra* at 6), Plaintiff did not disclose any expert medical witness, including a treating physician, to opine regarding causation.

ORDER - 12

at 92, 112, 118. His medical records also reflect that he had previously been suffering from "chronic pain" in his hips, back, ribs, and sternum (*id.* at 71, 113), and on July 29, 2019 – three days before the incident – he was seen by a chiropractor for "severe low[er] back pain." Dkt. 16 at 7.

Defendant proffers the expert report of Dr. Josef K. Eichinger, an orthopedic surgeon who performed a physical examination of Holm and reviewed his medical records (including an MRI). *See* Eichinger Decl. Dr. Eichinger opines that Holm's shoulder injuries were "neither caused nor worsened by the subject accident." Dkt. 18, Ex. 1 at 23. Rather, "Holm's complaints are a result of chronic rotator cuff disease," and his shoulder injuries were "most likely consistent with a pre-existing degenerative condition rather than a traumatic event." *Id.*, Ex. 1 at 25 (opining that the cause of Holm's condition is "multifactorial"; "Genetic, age and occupational factors such as his highly repetitive work with overhead motion are the primary reasons"). Dr. Eichinger also attributed Holm's complaints about his hips to his "history of a prior injury and a pre-existing arthritic condition." *Id.*, Ex. 1 at 26. Plaintiff has not proffered any expert testimony refuting Dr. Eichinger's opinions.

In light of Holm's documented prior injuries and complaints of pain, and the nature of his alleged injuries, the Court finds that no lay fact finder would be capable of determining whether his shoulder and other injuries were caused by the incident aboard the Head Hunter. *See, e.g.*, *Miller v. Union Pac. R.R. Co.*, 526 F. Supp. 3d 494, 509 (D. Neb. 2021) ("A lay juror could not have determined [plaintiff] tore his rotator cuffs without the assistance of expert testimony."). In *Bradley v. Wal-Mart Stores, Inc.*, 336 F. App'x 640 (9th Cir. 2009), the Ninth Circuit upheld a district court's granting of summary judgment because the plaintiff, who alleged the defendant's negligence caused him to fall and sustain a rotator cuff injury, had not proffered expert medical

ORDER - 13

testimony demonstrating "that this injury was caused by his fall." *Id.* at 641-42 ("A torn rotator cuff involves medical factors beyond [plaintiff's] knowledge."). Here, likewise, Plaintiff does not proffer any expert medical testimony that could enable a lay fact finder to conclude that his injuries were sustained on August 1, 2019, and not previously from prior accidents or a degenerative condition. Indeed, Holm's medical records and Dr. Eichinger's unrefuted medical opinion sharply contradict any such conclusion. The Court, therefore, finds that no reasonable juror could conclude that Plaintiff's injuries were suffered aboard the Head Hunter.

Accordingly, the Court finds that none of Plaintiff's claims can survive summary judgment.[5] Although the Motion was filed only by *in personam* defendant Myers, this Court's ruling necessary forecloses Plaintiff's claims against *in rem* defendant the Head Hunter.

## V. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's motion for summary judgment (Dkt. 13). The Court dismisses, with prejudice, Plaintiff's claims for common law negligence, Jones Act negligence, unseaworthiness, and failure to pay maintenance and cure. This case is hereby dismissed.

SO ORDERED.

Dated: July 1, 2022

*Barbara J. Rothstein*

Barbara Jacobs Rothstein
U.S. District Court Judge

---

[5] Given this ruling, the Court need not reach Defendant's argument that Plaintiff is not entitled to punitive damages arising from Myers' alleged failure to provide maintenance and cure. *See* Mot. at 26-29.

ORDER - 14